UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION 3:07–CV–135–H

ANACLETA NEARY,　　　　　　　　　　　　　　　　　　　　　　　　　　　PLAINTIFFS
YONSUN FRYE, and
KYONG C. WILLIAMSON

V.

SOUTHEASTERN VOCATIONAL SERVICES　　　　　　　　　　　　　　　　DEFENDANT
d/b/a GULF COAST ENTERPRISES

**MEMORANDUM OPINION AND ORDER**

Plaintiffs have brought this action against Defendant Southeastern Vocational Services d/b/a Gulf Coast Enterprises[1] ("Gulf Coast"), alleging that Gulf Coast violated the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. § 344.010 et seq., by terminating them on the basis of their national origin and/or their age. Gulf Coast has moved for summary judgment on all of these claims. The case is somewhat unusual because it arises, at least in part, from Gulf Coast's efforts to comply with a federal program which encourages the hiring of blind or disabled persons. For the reasons that follow, the Court will sustain Gulf Coast's motion in part and deny it in part.

I.

The facts of this case are relatively straightforward and uncomplicated. Gulf Coast provides janitorial services at Fort Knox pursuant to a federal contract which took effect on August 1, 2005. Though a number of previous contractors had provided these services, Gulf

---

[1] Defendant indicates that it is "more properly identified" as Lakeview Center Inc. d/b/a Southeastern Vocational Services d/b/a Gulf Coast Enterprises." Defendant's Memorandum in Support of Motion for Summary Judgment at 1.

Coast was the first to be awarded the contract under the so-called Javits-Wagner-O'Day ("JWOD") program, which "provide[s] training and employment opportunities for persons who are blind or have severe disabilities." *NISH v. Cohen*, 247 F.3d 197, 201 (4th Cir. 2001) (citing *Barrier Indus., Inc. v. Eckard*, 584 F.2d 1074, 1076 (D.C. Cir.1978)).[2] In order to qualify for participation in the program, seventy-five (75) percent of the man hours of direct labor provided by the contractor must be worked by "sheltered" individuals, *i.e.*, those who are blind or otherwise severely disabled. *See, e.g., McGregor Printing Corp. v. Kemp*, 20 F.3d 1188, 1190–91 (D.C. Cir. 1994) (citing 41 U.S.C. §§ 47–48).

Upon receiving the janitorial services contract at Fort Knox, Gulf Coast avers that it offered all janitorial employees of the previous contractor an opportunity to apply for a position with Gulf Coast. Among those previous employed at Fort Knox who were hired by Gulf Coast were Plaintiff Neary, who is of Italian descent and was seventy-five (75) years old at the time, Plaintiff Frye, who is of Korean descent and was fifty-one (51) at the time, and Plaintiff Williamson, who is also of Korean descent and was fifty-eight (58) at the time. None of the three Plaintiffs is a "sheltered" individual.

For reasons unknown to the Court and seemingly irrelevant to this case, the Army ordered Gulf Coast to discontinue work in several buildings at Fort Knox on June 1, 2006. Gulf Coast placed the twenty-eight (28) employees who had provided janitorial services in those buildings on "temporary layoff" the next day. Plaintiffs were not among these laid-off

---

[2]The JWOD program, enacted in its current form in 1971, is now known as the AbilityOne program. It "provides employment opportunities for nearly 48,000 Americans who are blind or have other severe disabilities by orchestrating government purchases of products and services provided by nonprofit agencies employing such individuals throughout the country." A Brief History of the AbilityOne Program, http://www.abilityone.gov/jwod/about_us/about_us.html (last visited June 18, 2008).

employees. However, this layoff decreased the amount of direct labor that Gulf Coast was providing using "sheltered" individuals pursuant to its contract to approximately seventy-one (71) percent, meaning that Gulf Coast was out of compliance with JWOD program mandates. In an effort to get back into compliance, Gulf Coast placed four (4) non-sheltered employees, including Plaintiffs, on "temporary layoff," and recalled two (2) sheltered employees, both of whom are younger than Plaintiffs and of different national origin than Plaintiffs.

Plaintiffs filed their single-count action in state court on February 20, 2007, seeking injunctive, declaratory, and monetary relief. Gulf Coast, a Florida corporation, removed the action to federal court on the basis of diversity jurisdiction, and filed the instant motion for summary judgment on February 1, 2008.

## II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive

3

issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing Fed. R. Civ. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.

Plaintiffs filed their action pursuant to the KCRA, which, in pertinent part, makes it unlawful for an employer:

> To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

Ky. Rev. Stat. § 344.040(1). Specifically, Plaintiffs allege that Gulf Coast discharged them from their employment on the basis of their national origin and their age. Complaint at ¶¶ 10–11.

Kentucky courts look to federal courts' interpretation of the Civil Rights Act of 1964 for guidance in interpreting the KCRA. *See, e.g., Jefferson County v. Zaring*, 91 S.W.3d 583, 586 (Ky. 2002) (citing, *inter alia, Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226 (Ky. 1984)). Thus, Kentucky courts have adopted the United States Supreme Court's framework for claims of unlawful discrimination, which they have characterized as follows:

> First, the plaintiff must establish a *prima facie* case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to 'articulate some legitimate nondiscriminatory reason' for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has

4

> an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination.

*Zaring*, 91 S.W.3d at 590 (internal citations omitted). In order to make out a *prima facie* case of discrimination regarding an employee's discharge, the employee-plaintiff must show that he belongs to a statutorily protected group, that he performed his job satisfactorily, that he was terminated, and that he was replaced by a person who is not a member of the plaintiff's statutorily protected group. *Harker*, 679 S.W.2d at 230; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[3]

A.

Plaintiffs' ability to make out a prima facie case may depend upon whether their layoffs occurred as part of a generalized work force reduction. *See generally Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 895–98 (6th Cir. 1997). This is so because courts have made the logical distinction between layoffs arising from general business considerations contrasted with those where a specific person is fired and another hired as a placement. The Sixth Circuit has defined a work force reduction as occurring:

> when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is

---

[3]At least with regard to cases alleging age discrimination, the Sixth Circuit has refused to mechanically apply the *McDonnell Douglas* factors, believing that a less strict, case-by-case analysis of age discrimination claims is more faithful to the federal statute. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 n.4 (6th Cir. 1975) ("Too many different types of situations in employment occur for the strict application of general prohibitions and provisions"). This approach "makes a but/for test or the equivalent of a third stage pretext analysis without regard to whether the initial two states of the *McDonnell Douglas* test have been met," and as such, both the Sixth Circuit's case-by-case approach and a more mechanical application of the *McDonnell Douglas* factors "require an age discrimination plaintiff to produce specific evidence that age was a determining factor in the employment termination in order to avoid summary judgment." *Harker*, 679 S.W.2d at 230.

5

> replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). The facts before the Court indicate that Plaintiffs were discharged as part of a work force reduction, as the constraints imposed by the JWOD program remove the instant case from the realm of other, more straightforward employment discrimination cases in which all members of a work force are essentially indistinguishable from one another for purposes of analysis. Thus, the "sheltered" employees should be (and were) conceptually bifurcated from "unsheltered" employees, since the JWOD program mandates a certain volume of "sheltered" labor. Commingling the two groups would potentially distort the Court's analysis and ignore the critical distinction introduced by Gulf Coast's participation in the JWOD program. Further confirming this view is the fact that the record reveals that Gulf Coast indicated to "unsheltered" employees that they were in a wholly different group from "sheltered" employees. *See, e.g.*, Defendant's Motion for Summary Judgment, Exhibit A at ¶ 14.

Defining the relevant work force as solely "unsheltered" employees reveals that Plaintiffs were indeed laid off and not replaced, *i.e.* that they were discharged as part of a work force reduction. Therefore the Court must determine if the evidentiary record will allow Plaintiffs' claim to proceed in that context.

B.

In the context of a work force reduction, "where the plaintiff has done no more than show the elements of the *McDonnell Douglas* formula that relate to his or her situation" the inference of unlawful discrimination does not arise, since merely satisfying these elements does not present "any evidence indicating that the work force reductions are not the reasons for the

discharge." *Barnes,* 896 F.2d at 1464–65. In such a situation, the plaintiff must produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.; see also LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1090–91 (6th Cir. 1984). In short, "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of [unlawful] discrimination." *LaGrant*, 748 F.2d at 1090.

Otherwise, as noted in the context of age discrimination claims, "every employer who terminates an employee between 40 and 70 years of age under any circumstances, will carry an automatic burden to justify the termination." *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 (6th Cir. 1980). Placing this added burden on plaintiffs in work force reduction situations is not unduly onerous, since "[i]f the plaintiff was truly singled out for discharge because of age he or she should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case." *Barnes*, 896 F.2d at 1465–66.

C.

Here, the evidence of age discrimination, though meager, is sufficient to survive summary judgment. In her affidavit, Plaintiff Neary avers that her supervisor "constantly made remarks about [Neary's] age," that the same supervisor "told people they should retire because of their age," and "stated that [Neary] should retire because of her age." Defendant's Response, Exhibit 1. Plaintiffs' supervisor Heidi Cook indicates that she is "a member of management." Defendant's Motion for Summary Judgment, Exhibit A at ¶ 2. Though her specific responsibilities with respect to the hiring and firing of employees are not elucidated in the

record, the Court is of the view that any "member of management" with supervisory authority over certain employees would likely have a role in the hiring and firing of those employees. This assumption, when combined with Cook's comments reported by Plaintiff Neary, provides a sufficient, though far from compelling, basis for Plaintiffs' age discrimination claim at the summary judgment stage.

Plaintiffs' allegations tread dangerously close to being the sort of conclusory and self-serving allegations found insufficient in *Sahadi* and *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982), and fall well short of the evidentiary showing in *Laugesen*. However they do surpass the *total* absence of evidence of discrimination found fatal in *Sahadi* and *Ackerman*. Therefore, summary judgment for Gulf Coast on Plaintiffs' age discrimination claim would be inappropriate.

In contrast, the record is utterly devoid of any "additional direct, circumstantial, or statistical evidence" that would support Plaintiffs' national origin discrimination claim in the context of a work force reduction.[4] Indeed, the only evidence on this issue is Plaintiff Neary's statement that the two "sheltered" employees hired after Plaintiffs' discharge were not of Italian or Korean descent. But as discussed above, consideration solely of the work force of "unsheltered" workers means that Plaintiffs were not "replaced" at all, and that the national origin of any re-hired "sheltered" workers is wholly irrelevant. Plaintiffs cannot sustain their national origin discrimination claim on this basis.

---

[4]Though the cases to which the Court refers for its framing of the instant facts as a work force reduction largely address age discrimination claims rather than national origin discrimination claims, their logic seems nearly as persuasive as to national origin discrimination claims. More importantly, the dearth of evidentiary support provided by Plaintiffs for their national origin claim would preclude that claim from proceeding under virtually any standard.

Therefore, being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is SUSTAINED IN PART and DENIED IN PART, and that Plaintiffs' national origin discrimination claim is DISMISSED WITH PREJUDICE.

This is NOT a final order.

cc: Counsel of Record